SHORTER VS. BOSWELL.

APPEAL from *Charles* County Court. The appellant exhibited to that court her petition for freedom against the appellee.

1. At the trial the petitioner offered to read in evidence to the jury, the deposition of *Mary Lancaster*, taken by consent of the parties, on the 24th of August 1803; wherein, to the *first interrogatory* propounded to the witness, viz. "Did you know *Martha*, or *Patt*, who formerly belonged to captain *John Lancaster*, and from whom did he get *Patt?*" she answered, "that she knew *Patt*, and always

*In a petition for freedom, the following part of the deposition of a witness was held to be competent evidence——'and always understood she, (the ancestor of the petitioner) came from R N, but did not know it of his own knowledge, and heard that she went by the name of P S." As also this part of the deposition of another witness. "That his mother, in her life-time, told him P S came to the family*

it was generally reported, and she always understood, that a woman named *P S* of *J L* from the family of *R N.*"

A record book of *Charles* county court, containing the certificate and affidavit of a priest in 1702, that he had, in 1681, in *Saint Mary's* county, married a negro man named *L R*, to a white woman named *E S* both servants of *W R*, an affidavit of a person who was present at the marriage, proving the same, as also the issue by the marriage, and an entry from the parish register of the latter county, stating that the above were therein recorded in 1702, and the whole recorded in the above record book in 1703, the entry thereof in the record book, (there being proof of the loss of the originals and of the parish register) was offered in evidence, in a petition for freedom, by a person claiming as a descendant from *E S* to prove the existence of a free white woman named *E S*, in the family of *W R*, her marriage, and the issue by that marriage, and was *held* to be admissible evidence.

understood she came from *Raphael Neale,* but did not know it of her own knowledge, and heard that she went by the name of *Patt Shorter.*" The defendant objected to the words "and always understood that she came from *Raphael Neale,* but did not know it of her own knowledge, and heard that she went by the name of *Patt Shorter,*" as not being competent evidence, and the county court sustained the objection, and refused to let that part of the deposition be read to the jury. The petitioner excepted.

2. The petitioner then offered and gave in evidence, by *Thomas Lancaster,* that his mother, *Mary Lancaster,* was dead. And also offered to prove by the same witness, "that his mother, in her life-time, told him that it was generally reported, and she always understood, that a woman named *Patt,* or *Martha,* came to the family of *John Lancaster* from the family of *Raphael Neale,* of *Saint-Mary's* county." But the defendant objected to it, as incompetent and inadmissible evidence; and the county court were of opinion that the same was not competent or admissible evidence, and refused to let it go to the jury. The petitioner excepted.

3. The petitioner then offered and gave in evidence, that she was the daughter of a woman named *Betty,* who was the daughter of a woman named *Sarah,* who was the daughter of a woman named *Betty,* who was the daughter of a woman named *Martha,* or *Patt,* who was held in servitude by *John Lancaster,* of *Charles* county, and that *Patt* was called *Patt Shorter,* and had two sisters, namely *Mary,* who belonged to *Edward Neale,* and *Jane,* who belonged to *Roswell Neale,* and that *Edward* and *Roswell Neale* were the sons of *Anthony Neale,* of *Saint Mary's* county, who died about the year 1728. The petitioner also gave in evidence, that *John Lancaster* married *Elizabeth,* the daughter of *Raphael Neale,* who was also the son of *Anthony Neale,* and that *Martha,* or *Patt,* was given to *John Lancaster* by *Raphael Neale;* that *John Lancaster* gave *Sarah,* above named, to *Henry Digges,* of *Charles* county, deceased, who intermarried with *Henrietta,* the daughter of *John Lancaster;* that *Digges* sold *Betty,* the daughter of *Sarah,* to the defendant, *Boswell;* and that the petitioner was born of *Betty,* after the sale of her mother to the defendant. The petitioner then produced one of the record books of *Charles* county court, and offered to read in evi-

1808.

Shorter
vs
Boswell

dence an entry made in the said record, in folios 225 and 226, to prove the existence of a free white woman named *Elizabeth Shorter*, in the family of a certain *William Roswell*, of *Saint-Mary's* county, and that she married a black man named *Little Robin*, the servant of *Roswell*, and had by him three daughters, namely *Mary*, *Jane* and *Martha*, and that *Elizabeth Shorter*, and her husband, were given by *Roswell* to *Anthony Neale*, and that *Neale* married the daughter of *Roswell*. The entry was as follows:

"At the request of Mr. *Anthony Neale*, the following certificate and deposition were recorded: *Maryland*, ss. *Saint-Mary's* county. These are to certify, that in the year 1681, or near about that time, I *Nicholas Geulick*, Priest, the subscriber hereof, did join together in the holy estate of matrimony, according to the then law, a negro man named, to the best of my remembrance, *Little Robin*, to a white woman, whose name was *Elizabeth Shorter*, which couple all that time were both servants unto Mr. *William Roswell*, deceased, and was after, as I am informed, disposed of by the said *Roswell* unto Mr. *Anthony Neale* of *Charles* county. Certified under my hand, this 15th day of *June*, *Anno* 1702.

"*Nicholas Geulick.*"

"Memorandum. The day and year above, came before me, Mr. *Geulick*, and made oath upon the Holy Evangelist, that the above affidavit is the whole truth and nothing but the truth.

"*Jurat coram me,*
"*Joshua Guibert.*"

"*Maryland*, ss. *St. Mary's* county. *Emma Roswell*, widow, aged seventy years, or thereabouts, being sworn upon the Holy Evangelist, declareth upon her oath, that she the said deponent was present at the marriage of the abovesaid couple, and that the ceremony was performed by the abovesaid Mr. *Nicholas Geulick*, Priest, and that the negro man's name was *Little Robin*, and the white woman's name *Elizabeth Shorter*; and that they were, at the time of their being married, both servants unto this deponent's husband, *William Roswell*, deceased, and by him given and made over and delivered up unto *Anthony Neale*, upon marriage of the said *Neale* with *Elizabeth*, the daughter of said *Roswell*, and have remained

in the said *Neale's* service ever since; and that after the marriage of the said negro man and white woman, the said white woman had three mulatto girl children, named *Mary, Jane* and *Martha*, who are now living to the best of this deponent's knowledge.

"This 15th day of *June Anno* 1702.    *Jurat coram me.*

"*Joshua Guibert.*"

*Maryland, St. Mary's* county, ss. (*King* and *Queen* parish,) *June* 6, 1702.    Then recorded upon the record book of the above said parish, the two within affidavits, one of Mr. *Nicholas Guelick*, Priest, the other of Mrs. *Emma Roswell*.    This being a true copy as now given under my hand the day and date above, by me,

"*Wm. Havett*, Clk. Vestry."

"Entered on the records of *Charles* county, *June* the 25th, 1703."    [See 3 *Harr. & M'Hen.* 239.]

The petitioner further gave evidence, that the paper in the record mentioned to be recorded, was not to be found among the papers remaining in the clerk's office of the county; and that the parish registers of *King* and *Queen* parish, in *Saint-Mary's* county, prior to the year 1744, have been lost or destroyed.    The defendant objected to the admissibility of the entry on the record, as evidence; and the county court sustained the objection.    The petitioner excepted.    There was a verdict and judgment for the defendant; and the petitioner appealed to this court.

The cause was argued before CHASE, Ch. J. BUCHANAN, and NICHOLSON, J. by

*T. Buchanan*, for the Appellant; and by
*Chapman*, for the Appellee.

THE COURT dissented from the opinions expressed by the court below, in all of the *bills of exceptions.*

JUDGMENT REVERSED, AND PROCEDENDO AWARDED. *(a.)*

*(a.)* In the case of *Mima Queen, and Child, vs. Hepburn,* 7 *Cranch,* 290, the Supreme Court of the *United States* decided, that *hearsay* evidence is incompetent to establish any specific fact, which is in its nature susceptible of being proved by witnesses who speak from their own knowledge; and that claims to freedom in *Maryland* are not exempt from that general rule.